IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIE HARRIS, | : | CIVIL NO. 3:CV-05-2544 |
|     Plaintiff | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| C.O. AUSTIN, et al., | : | |
|     Defendants | : | |

## MEMORANDUM AND ORDER

Plaintiff, Willie Harris ("Harris"), an inmate currently confined to the State Correctional Institution at Dallas, initially filed this civil rights action on December 9, 2005. (Doc. 1). The matter is proceeding *via* an amended complaint. (Doc. 19). Presently pending are defendants' motions to dismiss (Doc. 20) and for summary judgment (Doc. 22). For the reasons set forth below, the motion for summary judgment will be granted.

## I. Statement of Facts

Harris alleges that on July 17, 2005, on his way to the dining hall, defendant Sergeant Dietterick ("Dietterick") made racial and harassing remarks concerning the manner in which he was wearing his t-shirt. In accordance with the Pennsylvania Department of Corrections (DOC) administrative grievance system, which requires inmates to file formal written grievances for initial review following unsuccessful informal resolution of a problem, DC-ADM 804 VI(A)(1)(a), Harris timely filed grievance number 124642 complaining that defendant Dietterick made

crass and racial remarks because his t-shirt was not tucked in on his way to the dining hall.[1] (Doc. 24, p. 6). Therein, he also sought clarification of a new policy concerning t-shirts. (Id.). On August 2, 2005, the grievance officer responded providing Harris with clarification of the policy and denying the grievance with respect to the contention that defendant Dietterick made harassing and racial remarks. (Doc. 24, p. 7).

If an inmate is dissatisfied with the initial review response, the inmate may appeal to the Facility Manager within five working days from the date of receipt by the inmate of the Initial Review decision. (DC-ADM 804 VI(C)(1)(b). The next step in the review process, is that the Secretary of the Department of Corrections Office of Inmate Grievances and Appeals must review the inmate's appeal of the Facility Manager's decision. (DC-ADM 804 VI(D)(1)(b). It is undisputed that Harris did not appeal the initial review response. (Doc. 31, p. 2, ¶¶ 11, 12).

On July 29, 2005, Harris was issued Misconduct No. A725451. On that same date, the charges were dismissed. However, Harris remained confined to the Restricted Housing Unit ("RHU") in Administrative Custody status until August 11, 2005, due to a pending investigation. (Doc. 19, pp. 19-20). The investigation resulted in a recommendation that he be released back to general population. (Doc. 19, p. 24). Prior to initiation of this action, Harris did not pursue any of the three levels of appeals with respect to this misconduct.[2] (Doc. 24, p. 26). However,

---

[1] Harris's attempt to informally resolve the problem was unsuccessful.

[2] Appeals of misconducts are handled as follows: an appeal of the Haring Examiner's decision can be made to the Program Review Committee ("PRC") within fifteen days of the hearing; an appeal from the PRC decision to the Superintendent is to be made within seven days; and the final appeal to the Chief Hearing Examiner is to be made within seven days of

2

he did complete the appeal process after commencement of this action. (Doc. 45, p. 3).

After being released from the RHU, Harris filed Grievance No. 127399, complaining that Misconduct No. A725451 was false and retaliatory. (Doc. 24, p. 15). The grievance was returned to him because the subject matter was not appropriately reviewed by the Facility Grievance Coordinator. (Doc. 24, p. 16). Harris attempted to pursue the grievance further and he was again advised that he was pursuing relief through the wrong channels. (Doc. 24, p. 17).

On November 11, 2005, Harris sent a letter to the Secretary's Office of Inmate Grievances and Appeals inquiring about his appeal. (Doc. 24, p. 19). On November 21, 2005, he was notified that there was "no prior record of receipt of an appeal." (Doc. 24, p. 20). On December 8, 2005, Harris's appeal was received by the Secretary's Office of Inmate Grievances and Appeals. (Doc. 24, p. 22). Harris explained in a cover letter that he was resubmitting the appeal he mailed on September 15, 2005. (Doc. 24, p. 21). On December 28, 2005, the appeal was dismissed as untimely. The Chief Grievance Officer stated that "DC-ADM 804 provides you with a period of 15 working days in which to appeal the responses from the Superintendent. While we will often exercise latitude in issues of timeliness, it is noted your appeal is well beyond the stipulated 15 day period and includes no reason for this delay." (Doc. 24, p. 23).

Harris contends that he submitted the appeal in a timely fashion. In support of his contention, he submits the affidavit of a fellow inmate, Ian Watson ("Watson"). Watson states that during the second or third weeks of September 2005, he and Harris were in the prison law

---

the Superintendent's decision. See DC-ADM 801, available at http://www.cor.state.pa.us).

library and Harris informed him that "he was filing a grievance against several individuals with the Dept. of Corrections at Central Office. . . ." (Doc. 31, p. 10). He further states that he witnessed Harris "hand a sealed white envelope to the institution mail clerk. . . ." (Id.).

## II. Standard of Review

To prevail on a motion for summary judgment, the moving party must establish that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c); Gleason v. Norwest Mortgage, Inc., 243 F.3d 130, 138 (3d Cir.2001). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses. . . ." Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The moving party bears the initial burden of identifying evidence that demonstrates the absence of a genuine issue of material fact. Once the moving party has met its burden, it is incumbent upon the nonmoving party to set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The non-movant must produce affirmative evidence, beyond the disputed allegations of the pleadings, in support of the claim. FED. R. CIV. P. 56(e); see Celotex Corp., 477 U.S. at 322-23. "Such affirmative evidence--regardless of whether it is direct or circumstantial--must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." Saldana v. Kmart Corp., 260 F.3d 228, 231-32 (3d Cir. 2001)(quoting Williams v. Borough of West Chester, 891 F.2d 458, 460-61 (3d Cir. 1989). Thus, if the non-movant's evidence on any essential element of the claims asserted is merely "colorable" or is "not

significantly probative," the court should enter summary judgment in favor of the moving party. Anderson, 477 U.S. at 249-50. In other words, the non-moving party must " 'make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Serbin v. Bora Corp., 96 F.3d 66, 69 n. 2 (3d Cir.1996) (quoting Celotex Corp., 477 U.S. at 322). Further, in determining whether there remain any actual issues of factual dispute, the court must resolve all reasonable doubts in favor of the nonmoving party. Matsushita, 475 U.S. 574; Meyer v. Riegel Prods. Corp., 720 F.2d 303, 307 n. 2 (3d Cir.1983).

### III. Discussion

The Prison Litigation Reform Act (PLRA) requires prisoners to present their claims through an administrative grievance process before seeking redress in federal court. The act specifically provides as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. §1997e(a). Prisoners must exhaust administrative remedies as to any claim that arises in the prison setting, regardless of any limitations on the kind of relief that may be gained through the grievance process. See Porter v. Nussle, 534 U.S. 516, 532 (2002): Booth v. Churner, 532 U.S. 731, 741 n. 6 (2001). "[I]t is beyond the power of [any] court . . . to excuse compliance with the exhaustion requirement." Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) (quoting Beeson v. Fishkill Corr. Facility, 28 F. Supp. 2d 884, 894-95 (S.D.N.Y. 1998)). The

PLRA "completely precludes a futility exception to its mandatory exhaustion requirement." Nyhuis, 204 F.3d at 71. The PLRA also mandates that inmates "properly" exhaust administrative remedies before filing suit in federal court. Woodford v. Ngo, 126 S.Ct. 2378, 2387 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 2386. Failure to substantially comply with procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim. Spruill v. Gillis, 372 F.3d 218, 227-32 (3d Cir. 2004).

Harris concedes that he failed to exhaust his administrative remedies with respect to the t-shirt issue. As such, defendants are entitled to an entry of summary judgment as to this claim.

Likewise, defendants are entitled to an entry of summary judgment on the false misconduct issue as Harris has failed to exhaust his administrative remedies. Specifically, he failed to timely file his appeal to the Central Office. The affidavit of his fellow inmate, while indicative of the preparation of a grievance and the mailing of a document in the second or third week of September, is insufficient to establish that Harris timely mailed his appeal of the grievance at issue to the Central Office. There is no evidence of record to demonstrate that he did, in fact, mail his appeal in a timely fashion. As noted above, compliance with agency deadlines is mandated by the exhaustion system. Harris fails to demonstrate that he exhausted his administrative remedies.

Further, in his most recent supplement, Harris argues that he also utilized the procedure applicable to exhaustion of misconducts. However, this occurred after the initiation of this action. (Doc. 45, p. 2). Thus, the claims are subject to dismissal without prejudice due to his failure to exhaust his remedies prior to bringing his suit in federal court even though he may have exhausted them during the pendency of this litigation.[3] See Oriakhi v. United States, 165 Fed. Appx. 991, 993 (3d Cir. 2006) (district court properly dismissed Bivens claim where inmate exhausted administrative remedies after filing federal court action).

Lastly, Harris's argument that the administrative remedy process was unavailable is unconvincing. An inmate must take advantage of all administrative remedies available to him. See Brown v. Croak, 312 F.3d 109, 111 (3d Cir.2002). An administrative remedy may be found to be unavailable where a prisoner is prevented by prison authorities from pursuing the prison grievance process. See e.g., Brown, 312 F.3d at 112 (3d Cir.2002) (noting that prison security officials told inmate he must wait to file a grievance until the investigation was complete); Camp v. Brennan, 219 F.3d 279, 281 (3d Cir. 2000) (finding that inmate put on grievance restriction). In Harris's case, there is no record evidence indicating that the defendants prevented him from using the administrative remedy procedure, or that they were interfering with his attempts to utilize the procedure.

---

[3] Since the exhaustion of administrative remedies is a threshold issue, there is no need to consider Defendants' alternative arguments presented in their motion for summary judgment. Nor is there any need to address defendants' motion to dismiss the complaint.

## IV. Conclusion

Based on the foregoing, defendants' motion for summary judgment will be granted. An appropriate order will issue.

BY THE COURT:

/s/ James M. Munley
JUDGE JAMES M. MUNLEY
United States District Court

Dated: December 11th, 2006

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WILLIE HARRIS,** | : | CIVIL NO. 3:CV-05-2544 |
| **Plaintiff** | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| **C.O. AUSTIN, et al.,** | : | |
| **Defendants** | : | |

## ORDER

**AND NOW**, to wit, this 11th day of December 2006, upon consideration of defendants' motion for summary judgment, and in accordance with the foregoing memorandum, **IT IS HEREBY ORDERED** that:

1. Defendants' motion for summary judgment (Doc. 22) is GRANTED.

2. The Clerk of Court is directed to ENTER judgment in favor of defendants and against plaintiff.

3. The Clerk of Court is further directed to TERMINATE defendants' motion to dismiss (Doc. 20).

4. The Clerk of Court shall CLOSE this case.

5. Any appeal from this order is DEEMED frivolous and not in good faith. See 28 U.S.C. § 1915(a)(3).

BY THE COURT:

JUDGE JAMES M. MUNLEY
United States District Court